## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

ALVIN PARKER,                    )
                                 )
    Petitioner,        )
                                 )
v.                               )      **Case No. CIV-13-1365-D**
                                 )
TERRY MARTIN, et al.,            )
                                 )
    Respondent.        )

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner appearing pro se, brings this action seeking a federal writ of habeas corpus under 28 U.S.C. § 2254. United States District Judge Timothy D. DeGiuisti has referred the matter to the undersigned magistrate judge for preliminary review, for conducting any necessary hearings, including evidentiary hearings, for the entry of appropriate orders as to non-dispositive matters, and for the preparation and submission of proposed findings and recommendations as to dispositive matters referenced in 28 U.S.C. § 636(b)(1)(B) and (C). Currently before the Court is Respondent's Motion to Dismiss Second or Successive Habeas Petition. **ECF No. 8**. For the reasons explained below, it is recommended that the petition be **DISMISSED** because Petitioner has failed to make the showing required under the gatekeeping provisions of 28 U.S.C. § 2244(b)(1)(B).

As will be explained below, the scope of this Court's inquiry at this stage of the proceeding is limited. Although Petitioner has received authorization from the Tenth Circuit Court of Appeals to file a second or successive habeas petition in this Court,

Petition, ECF No. 1:18-20, the authorization does not give this Court jurisdiction to consider the *merits* of the petition; instead, the authorization permits Petitioner to proceed to the "second gate" pertaining to second and successive habeas petitions. *See Case v. Hatch*, 731 F3d 1015, 1029-30 (10th Cir. 2013).

## I. BACKGROUND

The procedural history of Petitioner's various challenges to his conviction is lengthy. In 1986, Petitioner was convicted following a jury trial of murder in the first degree for the fatal shooting of off-duty Oklahoma City police officer Gary Ward; following his conviction, Petitioner was sentenced to life imprisonment. Case No. CRF-85-698, District Court of Oklahoma County. Petitioner appealed, and on October 24, 1989, the Oklahoma Court of Criminal Appeals (OCCA) reversed the conviction and remanded for a new trial. At Petitioner's second trial held in May 1990, the jury convicted Petitioner of the lesser-included offense of second-degree murder after former conviction of a felony. Following the jury's recommendation, Petitioner was sentenced to 199 years of imprisonment. On direct appeal from his second trial, Petitioner included a claim challenging the testimony of Oklahoma City police forensic chemist Joyce Gilchrist,[1] and on May 26, 1994, the OCCA affirmed Petitioner's

---

[1] Petitioner raised eight issues on direct appeal following retrial: (1) the trial court erred by permitting the State's witness Todd Kiner to in effect identify Petitioner as Ward's killer;(2) the trial court erred by denying Petitioner the right to present admissible evidence and cross examine the State's key witness, Glenn Briggs; (3) the State failed to disclose lenient treatment given to State's witness Oscar Branham in exchange for his testimony; and the trial court erred in overruling Petitioner's motion for new trial based on newly discovered evidence on this issue; (4) the trial court erred by sustaining the State's objections to the testimony of Randle Bush; (5) the testimony of State's witness Joyce Gilchrist and the trial court's rulings concerning that testimony constituted reversible error; (6) the evidence was insufficient because the testimony of accomplice Glenn Briggs was not adequately corroborated; (7)

conviction and sentence. Motion to Dismiss, Ex. 8 (Summary Opinion, Case No. F-90-1212).

Petitioner then filed a writ of habeas corpus in this Court,[2] alleging that appellate counsel was ineffective for failing to raise a claim that his due process right to notice of the charges against him was violated because the jury was instructed that he could be found guilty of second degree murder, when the information only charged him with first degree murder. *Parker v. Champion*, Case No. CIV-96-335-T. Habeas relief was denied and that decision was affirmed on appeal. *Parker v. Champion*, 148 F.3d 1219 (10th Cir. 1998).[3]

Petitioner filed numerous applications for post-conviction relief in the state district court. *See Parker v. Sirmons,* Case No. CIV-05-1252-T, (ECF No. 1:4-5a, listing eight post-conviction actions to date).[4] In what the state district court characterized as Petitioner's seventh application for post-conviction relief, Petitioner sought a new trial

---

prosecutorial misconduct violated Petitioner's due process rights; and (8) cumulative errors require reversal or modification of sentence. Motion to Dismiss, Ex. 6, 1-8.

[2] Petitioner had filed two previous habeas actions, one in 1994 and another in 1995, which were dismissed as mixed petitions. *Parker v. Champion*, Case Nos. CIV-94-1547-T and CIV-95-1472-T.

[3] Petitioner thereafter sought authorization from the Tenth Circuit Court of Appeals to file a second or successive habeas petition, and his request was denied. *See Parker v. Reno*, No. 00-6171, 2000 WL 1531772 (10th Cir. Oct. 17, 2000). In 2003, Petitioner filed another habeas petition, alleging that newly discovered evidence showed that Joyce Gilchrist gave incorrect testimony concerning hair evidence at his trial. *Parker v. Workman*, Case No. CIV-03-650-T. On August 19, 2004, that habeas action was transferred to the Tenth Circuit pursuant to 28 U.S.C. § 2244(b)(3)(A).

[4] According to an order of the state district court, which is attached to the Petition, Petitioner has now filed fourteen state applications for post-conviction relief. Petition, ECF No. 1:12 (Case No. CF-1985-698, District Court of Oklahoma County) (Aug. 9, 2013).

based on newly discovered evidence – the results of a mitochondrial DNA test. *Id.* at 17-4 (*Parker v. State*, Case No. CF-1085-698, Order dated July 6, 2005). The state district court found that Petitioner failed to meet the requirements of Okla. Stat. tit. 22, § 1086 to avoid the application of a procedural bar to his claim of newly discovered evidence, and also that his claim failed on the merits. Petitioner appealed the state district court's decision and on September 1, 2005, the OCCA affirmed the denial of post-conviction relief, finding no error in the district court's conclusion that the DNA test results did not meet the requirements for newly discovered evidence pursuant to Okla. Stat. tit. 22, § 1080(d) and that Petitioner was not entitled to post-conviction relief. Case No. PC-2005-695, Oklahoma Court of Criminal Appeals.

After his state post-conviction application was denied, and that denial affirmed on appeal, Petitioner sought authorization from the Tenth Circuit Court of Appeals to file a second or successive habeas petition based on the results of the mitochondrial DNA test. *See Parker v. Sirmons,* Case No. CIV-05-1252-T, *Report and Recommendation,* 6 (W.D. Okla. Oct. 19, 2006) (Roberts, M.J.) *adopted*, (Dec. 28, 2006) (Thompson, D.J.). Authorization was granted, and Petitioner then filed a second and successive petition for habeas review. *Parker v. Sirmons,* Case No. CIV-05-1252-T (Oct. 28, 2005).

Although the Tenth Circuit authorized the filing of Petitioner's second and successive petition concerning the mitochondrial evidence, this Court ultimately found that Petitioner failed to satisfy the requirements of 28 U.S.C. § 2244(b)(2)(B), and

dismissed his claim. *See Parker v. Sirmons,* Case No. CIV-05-1252-T, *Report and Recommendation,* (W.D. Okla. Oct. 19, 2006) (Roberts, M.J.) *adopted,* (Dec. 28, 2006) (Thompson, D.J.); *see* 28 U.S.C. § 2244(b)(4) ("A district court shall dismiss any claim presented in a second or successive application that the court of appeals has authorized to be filed unless the applicant shows that the claim satisfies the requirements of this section."); *see also LaFevers v. Gibson,* 238 F.3d 1263, 1265 (10th Cir. 2001). Petitioner appealed, and the Tenth Circuit Court of Appeals denied a certificate of appealability[5]:

> The district court correctly dismissed Mr. Parker's petition under 28 U.S.C. § 2244(b)(2)(B)(ii). The petition contained only one reference to any underlying constitutional error: namely, the unexplained and unsupported statement that the new DNA evidence requires reversal under the Fourteenth Amendment. We agree with the district court that this was not sufficient to state a constitutional error. *See Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir.1991) ("conclusory allegations without supporting factual averments are insufficient to state a claim" (internal citations omitted)).

*Parker v. Sirmons,* 237 F. App'x 334, 335-36 (10th Cir. 2007).

As noted above, Petitioner has now received authorization to file another second or successive habeas petition. Petition, ECF No. 1:18-20. More specifically, Petitioner was granted authorization to file a petition predicated on the recantation of his cousin— Glenn Briggs—who Petitioner asserts was the "principal trial witness against him." Case

---

[5]A Certificate of Appealability will issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In order to make such a showing, a petitioner must demonstrate that "reasonable jurists could debate whether ... the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000).

No. 13-6254, Tenth Circuit Court of Appeals (Dec. 5, 2013). In his motion for

authorization to file a second or successive petition, Petitioner offered a declaration by

Mr. Briggs made under penalty of perjury, in which Briggs states that the perpetrator

was actually a person known to him only as "Thaddeus" or "Theddeus." *Id.* In his

response to the motion to dismiss, Petitioner has attached his own declaration, but not

the one upon which authorization was obtained. However, Respondent has provided the

two-page declaration of Mr. Briggs; the declaration purports to be made under penalty

of perjury, but it is neither notarized nor otherwise witnessed. Motion to Dismiss Second

or Successive Habeas Petition, Ex. 1.

## II. DISCUSSION

As thoroughly explained in its recent decision in *Case v. Hatch*, 731 F.3d 1015

(10th Cir. 2013), the Tenth Circuit notes that its authorization to file a second or

successive habeas petition in the district court is only the first in a two-step

"gatekeeping" process:

> The filing of a second or successive § 2254 application is
> tightly constrained by the provisions of AEDPA. Congress
> expressly established a two-step "gate-keeping" mechanism
> for the consideration of second or successive habeas corpus
> applications in federal courts. Before a court can consider a
> second claim, an applicant must first "move in the
> appropriate court of appeals for an order authorizing the
> district court to consider the application." 28 U.S.C. §
> 2244(b)(3)(A). The court of appeals then has 30 days to
> decide whether to grant the authorization to file. *Id.* §
> 2244(b)(3)(D).
>
> If the court of appeals finds the applicant "makes a prima
> facie showing that the application satisfies the requirements

6

of [§ 2244(b) ]," *id.* § 2244(b)(3)(C), the applicant may pursue a claim in district court. The district court must then review the proffered evidence, and "shall dismiss any claim ... that the court of appeals has authorized to be filed unless the applicant shows that the claim satisfies the requirements of [§ 2244(b) ]." *Id.* § 2244(b)(4).

*Case v. Hatch*, 731 F.3d 1015, 1026-27 (10th Cir. 2013) *cert. denied,* 134 S. Ct. 269 (2013). Accordingly, the following discussion will not center on the merits of Petitioner's claim regarding newly-discovered evidence in the form of a recantation by Mr. Briggs, but on whether Petitioner has met the requirements of § 2244(b)(2)(B). In *Case*, the Tenth Circuit Court of Appeals referred to this as the "second gate" in the AEDPA's provision regarding second and successive habeas petitions.

## A. THE "SECOND GATE"

At this stage, the district court must determine whether Petitioner has made the showing required under 28 U.S.C. § 2244(b)(2)(B). If not, the district court has no jurisdiction to consider the merits of the Petition, and it must be dismissed. 28 U.S.C. § 2244(b)(4).

In making this initial determination, the district court owes no deference to the rulings of the state courts. *Case*, 731 F.3d at 1027. Furthermore, a district court must not defer to the court of appeals' preliminary determination granting authorization to file a second or successive petition. *Case,* 731 F3d at 1029-30. Rather, the district court must itself determine whether the petition satisfies the requirements of § 2244(b). *Id.* at 1030.

To pass through the second jurisdictional gate, a petitioner is required to make both of the following two showings. *Case*, 731 F.3d at 1030. First, a petitioner must show that the factual predicate for his claim could not have been discovered previously through the exercise of due diligence. 28 U.S.C. § 2244(b)(2)(B)(i). Second, that the facts underlying his claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for *constitutional error*, no reasonable factfinder would have found the applicant guilty of the underlying offense. *Id.* (emphasis added). With this standard in mind, the undersigned will examine the Petitioner's claim in this second or successive petition to determine whether the Court has jurisdiction to reach its merits.

## B. PETITIONER'S CLAIM

Petitioner alleges that "constitutional error occurred at trial based on the discovery of new evidence involving the recantation of trial testimony by a key prosecution witness over 23 years after the trial," citing the Fourteenth Amendment. Petition, 6. As supporting facts, Petitioner states:

> Petitioner received a declaration signed under penalty of perjury from a key prosecution witness recanting his trial testimony about petitioner being the murderer and placing the blame on a man known only to him as Thaddeus that the police could not locate during the original investigation. There is no other evidence that connects Petitioner to this crime. The prosecutor knew the testimony was false, because he led the witness to believe he would be convicted at a trial for the murder unless he cast blame on someone else. And in exchange for the false testimony the prosecutor dismissed the murder charge against the witness. But the witness was not a principle [sic] nor an aider and abetter to

the murder under the facts and the law. Even if the prosecutor had no independent knowledge the witness's testimony was false, the use of the perjured testimony violates the due process clause, because the recantation is credible and would have changed the outcome of the trial and the state left the conviction in place. The perjured testimony was of an extraordinary nature, leaving the court with a firm belief that but for it, the defendant would most likely not have been convicted. Consequently, the petition for writ of habeas corpus should be granted.

Petition, 6-6a.

In his declaration, Glenn Briggs states that he was a key prosecution witness against Petitioner, and that he lied to police when he told them that Petitioner shot Officer Gary Ward. Motion to Dismiss, Ex. 1, ¶ 1-2. Briggs states that a man he met that night, Thaddeus or Theddeus, was the one who shot the victim. *Id.* at ¶ 3. Briggs further states that Thaddeus came to his home the morning after the shooting and admitted that he had killed Officer Ward. *Id.* at ¶ 11. Briggs claims that he only told the police that Petitioner shot the victim after he, Briggs, was charged with murder; he claims to have identified Petitioner as the assailant because he couldn't remember where Thaddeus lived and "had to give them a name they could verify so they would believe me" and Petitioner's "was the first name that came to mind." *Id.* at ¶ 12.

In his response to the motion to dismiss, Petitioner provides his own affidavit. Response, Ex. A. He states that he did not know that the .357 magnum "service weapon" he was asked to hold for safekeeping[6] belonged to a police officer and was used to murder him. *Id.* at ¶ 1. He claims not to have given the gun to anyone as

_____

[6] Petitioner does not indicate from whom he received the "service weapon."

collateral for a loan, did not have the weapon with him the day after the murder when leaving his girlfriend's house. *Id.* at ¶ 2-3. In the fourth paragraph of Petitioner's affidavit, he states:

> That I was not in the crawl space hiding from the police when they came to my parent's home to arrest me for Ward's murder. When police came unexpectedly to my parent's home that morning and raced up to the home with guns drawn I sensed something was seriously wrong with the .357 service weapon I was asked to hold for safekeeping as a favor the day before, and I went into the crawl space, and got caught hiding the gun.

Response, Ex. A, ¶ 4. He concludes with a statement that he did not murder Officer Ward, and would have testified to these facts at trial in light of Briggs' recantation. *Id.* at ¶ 5.

### C. THE MOTION TO DISMISS

In his motion to dismiss, Respondent contends that Petitioner can meet neither of the showings required before a court may consider a second or successive petition on the merits. Respondent argues that because a man named "Theddeus" had been mentioned by Briggs in an attempt to establish an alibi as early as 1985, Petitioner could have discovered the factual predicate for his claim "through the exercise of due diligence." Motion to Dismiss, 15.

Respondent further argues that even if Petitioner had shown that he could not have discovered the factual predicate of his claim until receipt of Mr. Briggs' recantation, he has not shown that "the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and

convincing evidence that, *but for constitutional error,*" no reasonable factfinder would have found applicant guilty of the underlying offense." Motion to Dismiss, 15 (citing 28 U.S.C. § 2244(b)(2)(B)(ii)) (emphasis added). Respondent further contends that Petitioner has failed to identify any constitutional error, and that a freestanding claim of actual innocence fails to satisfy the requirements of 28 U.S.C. § 2244(b)(2)(B)(ii)).

Because both showings are required before this Court can consider the merits of Petitioner's claim, and the undersigned finds that Petitioner has failed to meet the requirements of § 2244(b)(2)(B)(ii), it is unnecessary to consider whether he could have discovered the factual predicate of his claim prior to receipt of Mr. Briggs' recantation. *Case v. Hatch*, 731 F.3d 1015, 1031 (10th Cir. 2013), *cert. denied*, 134 S. Ct. 269 (2013) (because requirements of § 2244(b)(2)(B) are conjunctive, court can choose to focus analysis on subparagraph (B)(ii) without reaching any conclusion on subparagraph (B)(i)).

Respondent also relies on the decision in Petitioner's previous second or successive petition. Motion to Dismiss, 5-6. Respondent urges the undersigned to take notice of Petitioner's previous federal proceedings in analyzing the instant claim. *Id.* at 6 (citing *Louis Baptist Temple, Inc. v. Federal Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979)). In reaching a recommendation, the undersigned has thoroughly reviewed the findings and conclusions contained in the orders regarding Petitioner's previous second or successive petition. *See Parker v. Sirmons,* Case No. CIV-05-1252-T,

11

*Report and Recommendation,* 6 (W.D. Okla. Oct. 19, 2006) (Roberts, M.J.) *adopted*, (Dec. 28, 2006) (Thompson, D.J.).

**D. ANALYSIS**

In *Case v. Hatch,* 731 F.3d 1015 (10th Cir. 2013), the Tenth Circuit examined the federal district court's role in applying the second or successive gatekeeping provision, and reversed the lower court's decision to consider a second or successive habeas petition on the merits. Although the petitioner in *Case* alleged the withholding of *Brady* material, he also offered new evidence similar to that offered here: the recantations of two trial witnesses. *Case*, 731 F.3d at 1023-34. After analyzing the newly offered evidence related to the petitioner's *Brady* claim, the Tenth Circuit went on to consider the witness recantations. *Id.* at 1043-44.

First, the Court noted that the (B)(ii) determination does not require an evaluation of evidence not linked to a "*trial-based constitutional violation.*" *Id.* at 1043.

> Because of the necessary linkage between a petitioner's probable innocence and the alleged constitutional error, the inquiry under subparagraph (B)(ii) excludes any consideration of evidence not rooted in constitutional error at trial. As the Supreme Court put it in discussing a claim of actual innocence before AEDPA, "[the newly discovered] evidence must *bear upon* the constitutionality of the applicant's detention; the existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus." (emphasis added; other emphasis omitted) (internal quotation omitted);

*Case*, 731 F.3d at 1034 (quoting *Herrera v. Collins,* 506 U.S. 390, 400 (1993)). Second, the Tenth Circuit made the following observation regarding recantations in general:

> [R]ecanted testimony is notoriously unreliable, "easy to find but difficult to confirm or refute: witnesses forget, witnesses disappear, witnesses with personal motives change their stories many times, before and after trial." *Carriger,* 132 F.3d at 483; *cf. Davis I,* 565 F.3d at 825 ("[W]e repeatedly have noted that recantations are viewed with extreme suspicion by the courts ... because ... recantation testimony upsets society's interest in the finality of convictions, is very often unreliable and given for suspect motives, and most often serves merely to impeach cumulative evidence rather than to undermine confidence in the accuracy of the conviction.") (internal quotation omitted).

*Case v. Hatch*, 731 F.3d 1015, 1044 (10th Cir. 2013) *cert. denied,* 134 S. Ct. 269 (2013).

The Tenth Circuit went on to hold that the witness recantations in *Case* did not satisfy the requirements of 28 U.S.C. § 2244(b)(2)(B)(ii).

In considering Petitioner's previous second or successive habeas petition, Magistrate Judge Roberts also relied on Petitioner's failure to link the newly discovered evidence in that case to any constitutional violation. *Parker v. Sirmons,* Case No. CIV-05-1252-T, *Report and Recommendation,* (W.D. Okla. Oct. 19, 2006) (Roberts, M.J.) *adopted*, (Dec. 28, 2006) (Thompson, D.J.) ("First, and most importantly, Petitioner fails to identify any constitutional error.").

The undersigned finds that Petitioner's failure to link Briggs' recantation to any constitutional violation is again determinative of his most recent petition. In an attempt to show such a link Petitioner makes various arguments.

First, he argues that without Briggs' testimony, there is no other evidence that connects Petitioner to this crime. Petition, 6-6a. He also claims that the prosecutor

knew Briggs' testimony was false, because the prosecutor led Briggs to believe he would be convicted at a trial for the murder even though Briggs was "not a principle [sic] nor an aider and abetter to the murder under the facts and the law." Response, 3. He claims that because Briggs was facing a murder charge, he was forced to cast blame on someone else, and that in exchange for false testimony the prosecutor dismissed the murder charge. *Id.* Finally, he claims that even if the prosecutor had no independent knowledge that Briggs' testimony was false, the use of the perjured testimony violates the due process clause. *Id.*

The undersigned finds these allegations insufficient to link Briggs' recent recantation to a constitutional violation. First, there is nothing to support Petitioner's bald allegation that the prosecutor knew Briggs' testimony was false because "there was no other evidence that connects Petitioner to this crime." Petition, 6-6a. As noted by Magistrate Judge Roberts, there would be no reason for the prosecutor to believe that Briggs' fourth statement was false given that the information Briggs provided led directly to the discovery of Petitioner hiding in the crawl space of his house, where there was also found Officer Ward's service weapon and three bullets hidden in a cardboard box—a box with a fingerprint that matched that of Petitioner. *Parker v. Sirmons,* Case No. CIV-05-1252-T, *Report and Recommendation,* 18 (W.D. Okla. Oct. 19, 2006) (Roberts, M.J.) *adopted*, (Dec. 28, 2006) (Thompson, D.J.).

As stated by Respondent, "why would the prosecution have any reason to think Briggs' testimony implicating Petitioner was false when this testimony was the only

version of the story corroborated by the physical evidence, including Petitioner's demonstrable possession of the slain officer's service weapon in the hours and days following the shooting." Motion to Dismiss, 17-18. The undersigned agrees, and finds that there is nothing supporting any claim that the prosecutor knowingly offered perjured testimony.

Petitioner's claim that the prosecutor knew Briggs' testimony was false, because the prosecutor led Briggs to believe he would be convicted at a trial for the murder even though Briggs was "not a principle [sic] nor an aider and abetter to the murder under the facts and the law," is equally unavailing with regard to establishing a link between Briggs' recantation and a constitutional violation. According to Petitioner's response to the motion to dismiss, he concedes that Briggs' was told he was being charged with murder based on a handwriting analysis that showed Briggs' was at the hotel at the time of the shooting. Response, 7-8. To the extent the prosecutor "led Briggs to believe he would be convicted at a trial for the murder," the prosecutor based that upon evidence placing Briggs at the scene of the crime—the handwriting comparison. Petitioner tries to argue that this was a threat with no teeth because Briggs was "not a principle [sic] nor an aider and abetter to the murder under the facts and the law." To the contrary, evidence placing Briggs at the crime scene at the time of the shooting—whether he or someone he was with actually committed the murder—would indeed support a charge of murder under any one of several theories. The fact that Briggs implicated Petitioner in the crime after being faced with this evidence does not

15

support an inference that the prosecutor should have known that Briggs' testimony was false.

Finally, Petitioner argues that even if the prosecutor had no independent knowledge that Briggs' testimony was false, the use of the perjured testimony violates the Fourteenth Amendment. However, without a link to an underlying constitutional violation, this argument is nothing more than a stand-alone claim of actual innocence:

> The universe of facts that enter into the subparagraph (B)(ii) analysis consists *only* of evidence presented at the time of trial, adjusted for evidence that would have been admitted or excluded "but for constitutional error" during trial proceedings. The factual universe does not encompass new facts that became available only after trial and that are not rooted in constitutional errors occurring during trial.

*Case,* 731 F.3d at 1038. Here, Briggs' recantation was not available at trial. As Petitioner did in his previous attempt to have this Court consider the merits of a second or successive petition concerning mitochondrial evidence, he has only argued that the newly-discovered evidence in the form of Briggs' recantation requires reversal under the Fourteenth Amendment. Petition, 6-6a. However, as the United States Supreme Court has stated, habeas courts do not sit to correct errors of fact following a conviction:

> This rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution-not to correct errors of fact. See, *e.g., Moore v. Dempsey,* 261 U.S. 86, 87-88 (1923) (Holmes, J.) ("[W]hat we have to deal with [on habeas review] is not the petitioners' innocence or guilt but solely the question whether their constitutional rights have been preserved"); *Hyde v. Shine,* 199 U.S. 62, 84 (1905) ("[I]t is

16

well settled that upon *habeas corpus* the court will not weigh the evidence") (emphasis in original); *Ex parte Terry,* 128 U.S. 289, 305 (1888) ("As the writ of *habeas corpus* does not perform the office of a writ of error or an appeal, [the facts establishing guilt] cannot be re-examined or reviewed in this collateral proceeding") (emphasis in original).

More recent authority construing federal habeas statutes speaks in a similar vein. "Federal courts are not forums in which to relitigate state trials." *Barefoot v. Estelle,* 463 U.S. 880, 887 (1983). The guilt or innocence determination in state criminal trials is "a decisive and portentous event." *Wainwright v. Sykes,* 433 U.S. 72, 90 (1977). "Society's resources have been concentrated at that time and place in order to decide, within the limits of human fallibility, the question of guilt or innocence of one of its citizens." *Ibid.* Few rulings would be more disruptive of our federal system than to provide for federal habeas review of freestanding claims of actual innocence.

*Herrera v. Collins*, 506 U.S. 390, 400-01 (1993) (parallel citations omitted). Petitioner's attempt to avoid the denial of his habeas request by stating that he asserts a violation of his Fourteenth Amendment rights is conclusory; he fails to explain how his rights were violated and offers no legal authority to support his contention. The undersigned finds that Petitioner's new evidence is nothing more than a free-standing claim of actual innocence; he has failed to show any link between Briggs' recantation and a constitutional error at trial. Accordingly, his claim fails to satisfy the requirements of 28 U.S.C. § 2244(b)(2)(B)(ii) and must be dismissed pursuant to 28 U.S.C. § 2244(b)(4).

The undersigned also finds that Petitioner's request for an evidentiary hearing should be denied. Under the Supreme Court's recent decision in *Cullen v. Pinholster,* it noted the general rule that habeas "review under § 2254(d)(1) is limited to the record

that was before the state court that adjudicated the claim on the merits." 131 S. Ct. 1388, 1398 (2011). Petitioner's request to hold an evidentiary hearing seeks to place additional evidence before the federal district court that was not part of the record before the state court. More specifically, as stated in *Case*, the "universe of facts" germane to a determination as to whether a second or successive claim can be considered on the merits is limited to the evidence presented at the time of trial, unless there was evidence that would have been admitted or excluded *but for constitutional error during the trial proceedings. Case,* 731 F.3d 1038. Thus, for the same reason this Court lacks jurisdiction to make a determination as to the merits of Petitioner's current claim—the lack of any nexus to a constitutional error at trial—the "factual universe" does not encompass new evidence. *Id.*

The same is true of Petitioner's motion to expand the record. ECF No. 12. He contends that Respondent did not comply with the Court's order for response because he did not indicate what transcripts of pretrial, trial, sentencing or post-conviction proceedings are available. However, as Respondent correctly notes, a motion to dismiss rather than an answer was filed. ECF No. 6, ¶ 4 ("In lieu of filing a formal answer as set forth herein, the Respondent may, when appropriate, file a motion to dismiss."). Moreover, the undersigned finds it unnecessary to expand the record in light of Petitioner's failure to make the showing required to proceed to a determination as to the merits of his most recent claim. Accordingly, Petitioner's motion to expand the record is hereby denied.

## **RECOMMENDATION**

For the reasons stated above, it is recommended that the petition for a writ of habeas corpus be **DISMISSED** pursuant to 28 U.S.C. § 2244(b)(4). The petition is second or successive, and Petitioner has failed to make the showing required to invest this Court with jurisdiction to hear his claim on the merits. Furthermore, Petitioner's Motion to Expand Record, **ECF No. 12**, is hereby **DENIED.** Petitioner has also filed an "Application to be 'Enlarged' Pendente Lite." ECF No. 16. In essence, Petitioner is requesting that this Court order that he be released "upon his own recognizance" because he possesses a "very strong likelihood of prevailing on the merits of the habeas action." Even if the Court had the power to order Petitioner's release, his premise in support of the request is obviously false given the proposed recommendation that his petition be dismissed. Accordingly, "Application to be 'Enlarged' Pendente Lite," **ECF No. 16**, is hereby **DENIED.**

## **NOTICE OF RIGHT TO OBJECT**

The parties are advised of their right to file specific written objections to this Report and Recommendation. See 28 U.S.C. § 636 and Fed. R. Civ. P. 72. Any such objections should be filed with the Clerk of the District Court by **April 7, 2014**. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010).

**STATUS OF REFERRAL**

This Report and Recommendation terminates the referral by the District Judge in this matter.

**ENTERED** on March 21, 2014.

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE